# United States Court of Appeals
## For the First Circuit

No. 22-1446

MATTHEW HANEY, as Trustee of the Gooseberry Island Trust,

Plaintiff, Appellant,

v.

TOWN OF MASHPEE; MASHPEE ZONING BOARD OF APPEALS; JONATHAN
FURBUSH; WILLIAM A. BLAISEDELL; SCOTT GOLDSTEIN; NORMAN J.
GOULD; BRADFORD H. PITTSLEY; SHARON SANGELEER, as they are
members of the Zoning Board of Appeals of the Town of Mashpee,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Paul Revere, III, for appellant.
Joseph A. Padolsky, with whom Louison, Costello, Condon &
Pfaff, LLP was on brief, for appellees.

June 6, 2023

**MONTECALVO, Circuit Judge.** Matthew Haney ("Haney"), as the Trustee of the Gooseberry Island Trust ("Trust"), brought a complaint against the Town of Mashpee ("Town") and its Zoning Board of Appeals ("Board") alleging an unconstitutional taking of property. The district court dismissed the complaint without prejudice for want of jurisdiction on ripeness grounds. This appeal raises two issues: (1) whether the government has reached a "final" decision on the Trust's request for variances and (2) whether requiring the Trust to submit further applications to the Town would be futile. Because Haney waived one of his arguments relative to the first issue and because his other arguments are meritless, we affirm the dismissal without prejudice.

## I. Background

As this case comes to us on a motion to dismiss, "we draw the relevant facts from the complaint." Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 100 (1st Cir. 2022). We also consider and rely on "documents incorporated by reference in the complaint . . . as well as matters appropriate for judicial notice." Lass v. Bank of America, N.A., 695 F.3d 129, 134 (1st Cir. 2012).

The Trust is the owner of Gooseberry Island, a four-acre island in Popponesset Bay, Mashpee, Massachusetts. Gooseberry Island lies offshore from the end of Punkhorn Point Road in

Mashpee.  The Trust also claims ownership in the land at the end of Punkhorn Point Road.[1]  Gooseberry Island is separated from the mainland by a channel that ranges from forty to eighty feet between mean low and high tides.  At low tide, the channel is less than two feet deep, and Gooseberry Island can be accessed by wading across the channel.  Prior to the Trust's current ownership of Gooseberry Island, it was used primarily as a camp for hunting and fishing.

## A. 2013 Variance Applications

Beginning in 2013, the Trust sought to construct a single-family residence on Gooseberry Island; this endeavor was subject to the Town's zoning bylaws.  Per the zoning bylaws, Gooseberry Island is located in an R-3 residential zone and -- as is relevant to the instant appeal -- any residence constructed by the Trust would be required to have at least 150 feet of frontage on a street and an unobstructed paved access roadway within 150 feet.  Gooseberry Island is entirely surrounded by water and thus

---

[1] The Trust's alleged ownership in the land at the end of Punkhorn Point Road emanates from SN Trust.  In October 2014, the Town filed a complaint in the Massachusetts Land Court challenging SN Trust's right, title, or interest to the land ("Title Dispute Action").  The Land Court entered judgment in favor of SN Trust and affirmed its ownership to the land.  The Town has appealed the Land Court's decision.  Because the distinction between SN Trust's ownership of the land at the end of Punkhorn Point Road versus Gooseberry Island Trust's ownership of Gooseberry Island is immaterial for purposes of the instant appeal, for ease of discussion, our reference to "the Trust" encompasses both the SN Trust and/or the Gooseberry Island Trust.

does not have any frontage on a street and is located more than 150 feet away from a paved roadway.

To enable construction of a single-family residence on Gooseberry Island, the Trust applied for variances from the Board on August 29, 2013, seeking relief from the frontage and roadway access requirements ("2013 Variance Applications"). The Board denied the 2013 Variance Applications (the "2013 Variance Decisions"). The 2013 Variance Decisions detailed that some Board members expressed concerns about access to Gooseberry Island in the event of an emergency, and that the Board ultimately determined granting the relief sought "would not advance the Town's interest in maintaining the public safety . . . [and] would in fact derogate from the underline [sic] purpose and intent of the Zoning By-laws." The 2013 Variance Decisions did not indicate whether they were made with or without prejudice.

## B. Bridge Proposals

In an apparent effort to address the Board's concerns with emergency access to Gooseberry Island and public safety, on March 14, 2014, the Trust filed a Notice of Intent with the Mashpee Conservation Commission ("MCC"). The Notice of Intent proposed to construct a timber bridge to span between the end of Punkhorn Point Road and Gooseberry Island. The proposed timber bridge would provide vehicular and pedestrian access to Gooseberry Island.

Throughout the course of public hearings on the Trust's Notice of Intent, the Mashpee Wampanoag Tribe ("Tribe") opposed the timber bridge. The Tribe held a shellfish grant from the Town "valid through 2027 and occup[ying] the entirety of the tidal creek between the Mashpee mainland at Punkhorn Point Road and Gooseberry Island." The Tribe maintained that construction of the timber bridge would result in significant environmental impact to the shellfish beds and permanent loss of shellfish habitat.

The MCC rejected the Notice of Intent without prejudice, and, on February 11, 2015, it denied the proposed timber bridge construction under the Massachusetts Wetland Protection Act, Mass. Gen. Laws ch. 131, § 40, and the Mashpee Wetlands Protection Bylaw. The Trust promptly filed a request for superseding review with the Massachusetts Department of Environmental Protection ("DEP"). DEP similarly denied the proposed timber bridge, finding that "the installation of sixteen 14-inch diameter piles within [the] salt marsh would destroy 17.1 square feet of salt marsh and that the shading impacts from the bridge decking would have an adverse effect on the productivity of the salt marsh." The Trust appealed DEP's superseding denial of the timber bridge to the Office of Appeals and Dispute Resolution.

The Trust requested an adjudicatory hearing before the Office of Appeals and Dispute Resolution and in the interim conferred with DEP about replacing the proposed timber bridge with

- 5 -

a steel bridge. The steel bridge purportedly would remove the pilings from the salt marsh area and allow better light penetration. DEP appeared to support the construction of a steel bridge, advising the Trust that the revised design complied with applicable regulations and was entitled to approval under the Wetlands Protection Act. DEP viewed the design changes as permissible pursuant to the Plan Change Policy.[2]

The Office of Appeals and Dispute Resolution held an evidentiary hearing on the Trust's appeal on December 7, 2015, and DEP thereafter filed a post-hearing memorandum stating its support for the Trust's "request for a Final Order of Conditions" and that the Trust's appeal should be granted. The MCC opposed DEP's request and argued that its review of the steel-bridge design "improperly circumvented the Plan Change Policy requirement of [thorough] local review."

The Office of Appeals and Dispute Resolution issued a final decision -- which was adopted by the Commissioner of DEP on June 22, 2017 -- finding that the steel-bridge proposal could not be considered under the Plan Change Policy because "the steel bridge is substantially different than the timber bridge and increases wetlands impacts to Salt Marsh and Land Containing

_____

[2] Under the Plan Change Policy, insubstantial changes to a Notice of Intent may be reviewed by DEP as a part of the appeal review, but substantial changes require a party to file a new Notice of Intent.

Shellfish."  Accordingly, the Office of Appeals and Dispute Resolution and DEP concluded that they could not review the steel-bridge proposal as a part of the timber-bridge appeal and that the Trust instead was required to file a new Notice of Intent with the MCC.  The Trust then appealed that decision all the way to the Massachusetts Appeals Court, which ultimately affirmed the Office of Appeals and Dispute Resolution's decision (the "DEP Appeal").  Haney v. Dep't of Env't Prot., 173 N.E.3d 55 (Mass. App. Ct. 2021) (unpublished table decision).

## C. 2018 Variance Applications

On November 9, 2018, the Trust once more applied to the Board for variances to enable construction of a single-family residence and again sought relief from the frontage and access requirements of the zoning bylaws ("2018 Variance Applications"). In an effort to address the perceived reason behind the Board's denial of the 2013 Variance Applications, the Trust provided the Board with a "2014 plan depict[ing] a bridge and Gooseberry Island."  The single-lane bridge would span between the end of Punkhorn Point Road and Gooseberry Island.  The Trust stated that the bridge would provide pedestrian and vehicular access to Gooseberry Island, including access by emergency vehicles.

The Board published written decisions unanimously denying the 2018 Variance Applications ("2018 Variance Decisions").  These written decisions are the only evidence in the

record of the Board's reasons for denying the 2018 Variance Applications. The 2018 Variance Decisions detail what transpired at the December 12, 2018 public hearing on the 2018 Variance Applications and reveal that part of the Board's discussion focused on whether "the bridge needs to be approved prior to building on the lot." The Trust's attorney acknowledged that the bridge had been through the DEP hearing process and was denied, but that the decision was under appeal.

In response to a Board member's concern that the Board did not have the authority to review and approve a bridge, the Trust's attorney suggested that the Board could grant the 2018 Variance Applications but condition the approval upon a bridge being built. At least one Board member expressed discomfort "with conditioning anything for these variance requests."

The Board closed the public comment session and unanimously voted to deny the 2018 Variance Applications. The 2018 Variance Decisions state that "[t]he Board, upon review of the testimony and evidence, determined that the proposed [v]ariance[s] would not advance the Town's interest in maintaining the public safety . . . [and] would in fact derogate from the underline [sic] purpose and intent of the Zoning By-laws." The 2018 Variance Decisions did not indicate whether they were made with or without prejudice.

## D. The Present Action

On April 29, 2021, Haney commenced the present action against the Town and the Board, seeking a declaratory judgment that the defendants' actions constituted uncompensated taking of property.[3] The complaint asserted two counts against the defendants: (1) violation of the Fifth Amendment of the U.S. Constitution due to an unconstitutional taking and (2) violation of the Massachusetts Constitution due to inverse condemnation. The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The defendants argued that Haney's claims were not ripe for adjudication because the Trust never applied to build a steel bridge.

The district court granted the defendants' motion to dismiss the complaint. The district court concluded that that the claims were not ripe for review because "[t]he facts as alleged in

---

[3] The Trust appealed the denial of the 2013 Variance Applications and then the denial of the 2018 Variance Applications to the Massachusetts Superior Court pursuant to Mass. Gen. Laws ch. 40A, § 17, which permits judicial review of the Board's decisions. According to the record on appeal, the parties requested that the Superior Court stay the zoning appeals until the Title Dispute Action and the DEP Appeal were fully resolved. However, on April 19, 2023, the Trust filed a motion with the Superior Court "to reschedule the date for the pre-trial conference" and, as a supporting basis for its request, relied on the instant federal action because, it contends, "[a] final decision in the federal appellate proceeding may obviate the need for th[e Superior Court] proceeding and result in voluntary dismissal of this matter."

the complaint fail to establish that there has been a final government decision on the Trust's steel[-]bridge proposal." Specifically, the district court found that the Trust never followed through with filing a new Notice of Intent with the MCC for construction of a steel bridge, even though "DEP expressed support for this proposal." The district court reasoned that because the Trust never "filed any application seeking a variance based on the steel[-]bridge proposal" and because pursuing the steel-bridge proposal would not be futile, the litigation was not ripe. Haney timely appealed the district court's dismissal of the complaint.

## II. Discussion

On appeal, Haney argues that the district court erred by dismissing the complaint as unripe. "We review de novo the dismissal of a takings claim on ripeness grounds." García-Rubiera v. Calderón, 570 F.3d 443, 451 (1st Cir. 2009).[4] "The Takings Clause of the Fifth Amendment, which applies to the states through

---

[4] Haney sought a declaratory judgment "as to the constitutionality and legality of [the Town's] actions." "[A]ppellate review of discretionary decisions not to grant declaratory relief is generally for abuse of discretion." Verizon New England, Inc. v. Int'l Brotherhood of Elec. Workers, Local No. 2322, 651 F.3d 176, 187 (1st Cir. 2011). Here, however, de novo review is appropriate because the district court did not deny the request for declaratory relief, but rather found it lacked jurisdiction to entertain the request in the first instance. See In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 638, 644 n.3 (1st Cir. 2019).

the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation." Franklin Mem'l Hosp. v. Harvey, 575 F.3d 121, 125 (1st Cir. 2009). Because Haney asserts that the defendants' actions unconstitutionally regulate how he may use Gooseberry Island, we focus our inquiry under the law of regulatory takings. See id. (explaining that the Takings Clause guards not only against physical takings but also against "certain uncompensated regulatory interferences with a property owner's interest in his property").

"A regulatory taking transpires when some significant restriction is placed upon an owner's use of [its] property for which justice and fairness require that compensation be given." Phillip Morris, Inc. v. Reilly, 312 F.3d 24, 33 (1st Cir. 2002) (cleaned up). Haney bears the burden of proving that the regulatory takings claim is ripe before a federal court has jurisdiction over the claim. Downing/Salt Pond Partners v. R.I. & Providence Plantations, 643 F.3d 16, 20 (1st Cir. 2011).

## A. Finality

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." Pakdel v. City & Cnty. of San Francisco, 141 S. Ct. 2226, 2228 (2021) (per curiam) (quoting Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 737 (1997)). This finality requirement "is

relatively modest[:] [a]ll a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." Id. at 2230 (cleaned up). To do so, "a developer must at least resort to the procedure for obtaining variances and obtain a conclusive determination by the [Board] whether it would allow the proposed development in order to ripen its takings claim." Suitum, 520 U.S. at 737 (cleaned up).

Haney argues that his claims are ripe for review because the Trust twice applied to the Board for variances and, each time, its requests were denied. He advances three arguments as to why the Board's 2018 Variance Decisions constitute a final decision: (1) the Trust could not get other approvals for construction of the bridge without those variances first being granted; (2) in making its decision on the 2018 Variance Applications the Board should not have considered whether a bridge permit was -- or would be -- issued by the MCC; and (3) the plain language of the 2018 Variance Decisions shows that the Board reached a final decision. We quickly dispose of the first two contentions.

Under the State Wetlands Protection Act, DEP's regulations, and Mashpee's local wetlands ordinance, any notice of intent seeking a permit to build a bridge would need to be accompanied by permits, variances, and approvals required "with respect to the proposed activity." See Mass. Gen. Laws ch. 131,

- 12 -

§ 40 (emphasis added); 310 Mass. Code Regs. § 10.05(4)(e).  The relevant proposed activity for the notice of intent is construction of a bridge to span from the end of Punkhorn Point Road to Gooseberry Island.  Variances for the construction of a single-family residence on Gooseberry Island are not, for purposes of the filing of a notice of intent, related to construction of the bridge.  Accordingly, the assertion that the Trust could not obtain approval for construction of the bridge without the Board first granting it variances for relief from frontage and roadway access requirements is mistaken.

Haney's second argument is similarly unavailing.  Pursuant to the Town's zoning bylaws and the Zoning Act, the Board is vested with the authority "[t]o hear and decide petitions for variances." Mass. Gen. Laws ch. 40A, § 14.  Despite any contention to the contrary, the Board did not inappropriately consider or determine any matters outside its jurisdiction.  The issue of whether the MCC would issue a permit for construction of the bridge was raised by the Trust's own attorney when he invited the Board to "act on [the] request for relief, and condition[] it upon the bridge being built."  Indeed, the Board is statutorily authorized to "impose conditions, safeguards and limitations" on the grant of a variance.  Mass. Gen. Laws ch. 40A, § 10.  Relative to this power, the Board received evidence about construction of a bridge that fell under the jurisdiction of the MCC in the first instance.

However, the Board never determined whether that permit should or should not issue. Accordingly, the Board did not exceed its jurisdiction or consider evidence it should not have.

We now turn to Haney's final argument -- that the plain language of the 2018 Variance Decisions show that the Board reached a final decision. He contends that the district court misconstrued the 2018 Variance Decisions because the Board never explicitly found that its decision to deny the variances were premised on the Trust's failure to have an approved steel bridge in place.

The district court concluded that "[t]he facts as alleged in the complaint fail to establish that there has been a final government decision on the Trust's steel[-]bridge proposal" and, therefore, the Trust's claim was not ripe. On appeal, Haney challenges this finding because he maintains that the 2018 Variance Applications were denied because the Board found that the granting of the variances would derogate from the underlying purpose and intent of the zoning bylaws, not because the Trust did not have an approved steel bridge in place.

In support of this contention, Haney draws a distinction between "the statements of individual [B]oard members with the operative decision." He maintains that the questions or concerns expressed by the Board members during the hearing regarding the absence of an approved steel bridge cannot inform our understanding

- 14 -

of the reason for denying the variances.[5]  Rather, Haney argues, the 2018 Variance Decisions delineate that the Board denied the 2018 Variance Applications because it found that granting them would derogate from the underlying purpose and intent of the zoning bylaws.  Haney suggests that reading the 2018 Variance Decisions in this manner reveals that the Board reached a final decision.

The sole reason offered by Haney as to why the 2018 Variance Decisions should be read in the manner he suggests is § 15 of the Zoning Act, which states that the Board "shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question . . . and setting forth clearly the reason for its decision and of its official actions[.]" Past quoting this section of the Zoning Act, the argument as to what should be construed as the Board's "reason for its decision" is entirely undeveloped.  Haney offers no authority as to why the discussion and statements of the Board members detailed in the 2018 Variance Decisions do not constitute the reasons for its decision.

---

[5] It does not escape our attention that in a January 2019 motion to consolidate the state court appeals of the 2013 Variance Decisions and the 2018 Variance Decisions, the Trust described the procedural history of the 2018 Variance Decisions as follows:

> "After holding a hearing on the application, the Board denied the request for variances. The [Board] declined to issue variances, in part, based upon conditional outcomes in other forums."  (Emphasis added.)

- 15 -

We thus see no support for the contention that we must disregard the statements made by the Board members as recorded in the 2018 Variance Decisions, at least when such statements are plausibly related to the concluding explanation given by the Board for denying the variances. That argument is underdeveloped, it is waived, and we are not in a position to evaluate it. Indeed, it is well-settled that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). We thus decline to adopt Haney's position regarding how the 2018 Variance Decisions should be interpreted under Massachusetts law based on the limited argument he has offered in support of that position.

Similarly, Haney offers no argument as to why the denial of the 2018 Variance Applications should be interpreted as with prejudice. The text of the 2018 Variance Decisions fails to specify whether the denials were with or without prejudice, and Haney does not provide us with any authority or guidance as to why we should read the decisions as being final and with prejudice.

In sum, Haney's claim that the plain language of the 2018 Variance Decisions shows that the Board reached a final decision on the requested relief is waived pursuant to "the settled appellate rule that issues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived."  Id.

## B. Futility

Haney next argues that the district court erred in finding that applying for a steel-bridge permit would not be futile.  We have recognized "that there is a narrow 'futility exception' to the final decision requirement for takings claims which, on rare occasion, may excuse the submission of an application for a variance or other administrative relief." Gilbert v. City of Cambridge, 932 F.2d 51, 60 (1st Cir. 1991) (quoting S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)).  If the prospect of an adverse decision is certain (or nearly so) "federal ripeness rules do not require the submission of further and futile applications." Palazzolo v. Rhode Island, 533 U.S. 606, 626 (2001).

This futility exception -- which has been part of our caselaw for three decades -- was recently endorsed by the Supreme Court in Pakdel.  141 S. Ct. at 2230.  In addressing the state-forum finality requirement, the Court held that a landowner only needs to show "that there is no question about how the regulations at issue apply to the particular land in question."  Id. (cleaned up).  The finality requirement is therefore met once it is clear to the federal courts that the initial decisionmaker has reached a "definitive position on the issue."  Id. at 2230 (quoting

Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)).

Through Pakdel, our caselaw's futility exception is now simply part and parcel of the finality requirement. Here, Haney argues that the finality requirement is met because the Trust should not be required to submit "applications for a bridge permit when the denial of any application for a variance from the [Board] is a certainty." Haney alleges that the Trust submitted the 2018 Variance Applications without a bridge approval in place because it "did not want to waste resources permitting and/or building a bridge if the Town would not even issue a building permit due to zoning concerns." This allegation casts doubt on Haney's argument that the Board would most certainly deny any variances. Instead, it makes clear that the Trust strategically chose to seek relief from the Board without the bridge approval in place in an effort to save resources.

Moreover, as discussed above, the Board made it clear when considering the 2018 Variance Applications that it was concerned with the lack of emergency vehicular access to Gooseberry Island and felt "uncomfortable with conditioning" the variances on a bridge that the Trust had not yet obtained approval for. The Board has never represented that it would deny any and all variance

applications -- even if the Trust presented applications accompanied by an approved steel-bridge plan.[6]

Given this, we cannot conclude that the Board has "committed to a position" with respect to the variances. See Pakdel, 141 S. Ct. at 2230. The Trust still has the option to pursue approval of the steel-bridge proposal and then present the Board with variance applications. See id. (holding the finality requirement met where there was no question about the government's position and such position inflicted a concrete injury on the plaintiff). Submission of those applications would further clarify "the extent of development permitted by the" Town's zoning bylaws. Palazzolo, 533 U.S. at 624. Accordingly, Haney has not demonstrated compliance with the finality requirement.

---

[6] Haney makes various allegations about the Town's delegation of power to the Tribe, including that the Town will not make any decisions favorable to the Trust's construction of a bridge and/or development of Gooseberry Island without the Tribe's assent. This argument does not advance the ball for Haney. The record reveals that the Tribe is primarily concerned with the effect construction of a bridge would have on the shellfish beds. The Tribe "oppose[d]" granting the 2018 Variance Applications because "[t]he bridge would interfere with their aquaculture project."

However, as the Board members recognized, construction of a bridge required approval from the MCC, and the Trust failed to apply for or secure a decision regarding the steel-bridge proposal. Moreover, the "initial decisionmaker" for variances for construction of a single-family home on Gooseberry Island is the Board, and they have not reached a definitive position. See Pakdel, 141 S. Ct. at 2229-30.

## III. Conclusion

Haney must first obtain the government's conclusive and definitive position on the application of the Town's zoning bylaws to Gooseberry Island before proceeding in federal court. <u>See</u> <u>Pakdel</u>, 141 S. Ct. at 2230. Having failed to do so, and for all the reasons stated above, the judgment of the district court is affirmed.